**UNITED STATES of America, Appellee,**

v.

**Albert Sumner TUCKER, Appellant.**

**No. 688, Docket 32810.**

United States Court of Appeals Second Circuit.

Argued July 23, 1969.

Decided Sept. 15, 1969.

868

David P. Steinman, Asst. U. S. Atty., Vincent T. McCarthy, U. S. Atty., for appellee.

Donald J. Zoeller, Harry C. Batchelder, Jr., Thomas R. Esposito, New York City, for appellant.

* Of the Eastern District of New York, sitting by designation.

1. The guns carried by the bank robbers when they entered the bank were introduced into evidence by the Government during the trial. They were toy guns. However, during the robbery a bank

Before WATERMAN and HAYS, Circuit Judges, and BARTELS, District Judge.*

WATERMAN, Circuit Judge:

After a jury trial in the United States District Court for the Eastern District of New York appellant Albert Tucker was convicted on April 15, 1968 upon two counts of bank robbery, one armed and one unarmed. He was sentenced to 10 years imprisonment on each count, the sentences to run concurrently. He appeals from the conviction on the ground that a confession was obtained from him in violation of his Fifth Amendment and Sixth Amendment rights, and the confession and the fruits thereof were erroneously admitted into evidence against him at the trial. We hold that the alleged error, if indeed error, was a constitutionally harmless error, and we affirm the judgment of conviction entered below.

On the morning of November 30, 1967, three men, apparently armed,[1] robbed the Bankers Trust Company in Maspeth, Long Island. Almost immediately after the three men entered the bank hidden movie cameras were activated by one of the tellers and also by the bank manager.[2] The three robbers took $22,600.00 in cash from behind the tellers' counters and then fled.

Five days later a Commissioner's warrant was issued for the arrest of Albert Tucker for his participation in the robbery. In the afternoon of the next day appellant was arrested pursuant to this warrant. A participant in the robbery with Tucker, David Jones, had already confessed and implicated him and another man, Joseph Bostic, in the robbery.

Tucker was arrested at his home and was then taken to FBI headquarters in a government automobile. The arrest-

guard's pistol was taken by one of the robbers, thereby giving them possession of a truly dangerous weapon.

2. The teller and the bank manager recognized two of the three men entering the bank as men who had previously robbed the same bank.

ing agent testified that he advised Tucker of his *Miranda* rights while en route. At headquarters Tucker was photographed, fingerprinted and processed for about twenty minutes and was then put in an interview room with two federal agents and a Queens County District Attorney's Squad Detective who had participated in the arrest. One agent read to Tucker the standard "Advice of Rights" form used by the FBI to advise all defendants of their constitutional rights. The accused then read the form himself and allegedly stated that he understood his rights. One agent asked Tucker whether he would sign the waiver at the bottom of the standard form and Tucker signed.

After approximately an hour and a half of interrogation Tucker confessed to having been one of the three men who robbed the Bankers Trust Company.[3] The confession was reduced to writing and he signed the transcription. Thereafter the officers and Tucker had dinner, following which Tucker took an agent to a house in the Bronx where some of the bank loot was stored.

At appellant's trial photographs taken by the bank's hidden movie cameras were introduced into evidence by the Government and one of these photographs showed Albert Tucker in the act of robbing the bank. Also, at the trial a bank employee positively identified Tucker as one of the robbers, and Tucker's robber companions, Jones and Bostic, testified against him.[4]

A hearing was held outside the presence of the jury in order to determine the admissibility of Tucker's confession. From the testimony then adduced the trial judge concluded that Tucker "was fully advised of his Constitutional rights, and that the confession was voluntarily and understandably made, and without threats or coercion." Thereafter, the confession and the money recovered from the Bronx house were introduced into evidence.

Appellant contends that the confession obtained from him by the police was obtained in violation of the *McNabb-Mallory* rule because he was not promptly brought before a United States Commissioner for arraignment on the charges before the interrogation began; that the waiver form he signed was deceptive and coercive; that he was threatened, tricked and cajoled into incriminating himself; that the interrogating agents ignored his request to consult with an attorney; and that he did not understand his right to have an appointed attorney present during the interrogation. We need not discuss these numerous claims for, even if there is a supportable claim of constitutional error, in view of the particular facts of this case the admission of appellant's confession was harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

Aside from the allegedly unconstitutionally obtained confession and the money thereafter recovered from the Bronx house, the overwhelming evidence that established Tucker's guilt was in the possession of the police, or was known to them, before he was arrested or questioned after the arrest. At trial he was positively identified as one of the bank robbers by a bank employee who was present during the robbery, both of Tucker's accomplices testified against him and implicated him in the robbery, and the unimpeachable photograph of the robbery taken by the hidden movie camera shows

---

3. During the first hour and thirty five minutes of the interrogation Tucker denied any complicity in the Bankers Trust Company robbery. He related an alibi story which placed him in a bar with his accomplices on the evening prior to the robbery. He stated he left the bar and went to another bar next to his home and from there went home to bed and that he was sleeping late the following morning when the bank robbery occurred. At trial Tucker changed his alibi and denied that he ever gave the first version.

4. The accomplices pleaded guilty to unarmed robbery and each received a sentence of ten years imprisonment.

Tucker committing the crime. Here the issue of Tucker's guilt or innocence was in no way a close question. Unchallenged and unimpeached evidence established guilt. Even without the eyewitness testimony an unimpeachable photograph is sufficient in and of itself to convict Tucker. On these particular facts we have no hesitancy in applying the *Chapman* rule and in finding that the admission of the allegedly unconstitutionally obtained confession and money, if error, was harmless beyond a reasonable doubt. Compare Ruona v. United States, 403 F.2d 215 (9 Cir. 1968) with Pearson v. United States, 389 F.2d 684 (5 Cir. 1968); see Lockett v. United States, 390 F.2d 168 (9 Cir.), cert. denied, 393 U.S. 877, 89 S.Ct. 175, 21 L.Ed.2d 149 (1968).

We are not unmindful of the Supreme Court statements to the effect that

> * * * even though there may have been sufficient evidence, apart from the coerced confession, to support a judgment of conviction, the admission in evidence, over objection, of the coerced confession vitiates the judgment [of conviction] * * *. Payne v. Arkansas, 356 U.S. 560, 568, 78 S. Ct. 844, 850, 2 L.Ed.2d 975 (1958).

See also, e. g., Jackson v. Denno, 378 U.S. 368, 376, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Haynes v. Washington, 373 U.S. 503, 517–520, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Blackburn v. Alabama, 361 U.S. 199, 205–208, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960)[5] Neither the physical or mental coercion nor the trickery that was practiced in the cited cases occurred here; this record

does not support such a claim. Consequently, the general statement in Payne v. Arkansas which we have quoted, *supra*, applicable there, is obviously inapplicable here. Even if Tucker's allegations of improper officer conduct could be substantiated and his confession were obtained in violation of his constitutional rights, a reversal of the conviction and a remand for a new trial would be an act of complete futility. Without the evidence of the confession and of the recovered loot appellant's guilt was overwhelmingly proved by other clearly constitutionally admissible evidence.

Affirmed.

---

5. Nor are we unmindful of the Supreme Court's statement in Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 that

> Although our prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error,[8] this statement in *Fahy* itself belies any belief that all trial errors which violate the Constitution automatically call for reversal. * * *

8. See, e. g., Payne v. State of Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (coerced confession); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (right to counsel); Tumey v. State of Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (impartial judge).

Here the alleged violation, if a violation in fact occurred, did not result in the denial of a fair trial and does not call for an automatic reversal. See Harrington v. California, *supra*.