No. 23237.

EUGENE VELARDE *v.* THE PEOPLE OF THE STATE OF COLORADO.
(466 P.2d 919)

Decided March 16, 1970.

EDWARD H. SHERMAN, Public Defender, JOSEPH R. QUINN, Assistant, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, JAMES F. PAMP, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE PRINGLE.

EUGENE VELARDE (hereinafter referred to as the defendant) was found guilty of the crimes of aggravated robbery and conspiracy to commit aggravated robbery and was sentenced to a term of imprisonment in the state penitentiary. The defendant makes two allegations of error. (1) It was error for the district attorney to elicit testimony from a police officer to the effect that the defendant had made a statement to the officer before there had been an *in camera* hearing on the issue of voluntariness. (2) It was error for the district attorney to use statements made by the defendant for the purpose of impeaching the testimony of the defendant when there had been no judicial determination on the question of voluntariness. We do not agree with the defendant's first contention of error, but we do agree with his second contention of error, and we remand the case to the trial court for a hearing on the question of voluntariness.

## I.

During examination of police officer Goebel by the prosecuting attorney, the following exchange took place:

"Q. When the attorney was present, did the Defendant make any statements to you?

A. Yes.

Q. And were these statements made in response to questions propounded by you?

A. Yes, they were."

At this point the prosecuting attorney suggested that there be a hearing outside the presence of the jury. Following an *in camera* hearing, the statements by the defendant were declared inadmissible by the trial judge.

■ The defendant takes the position that the reference by the People and their witness to the existence of a statement taken from the defendant as the result of police interrogation deprives the defendant of his right to counsel and his privilege against self-incrimination just as effectively as if the statement, taken in violation of the rule in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, had been admitted as evidence against him; especially, since the actual statement made by the defendant did not relate either to guilt or innocence while the impression left in the minds of the jurors was that the defendant had confessed his guilt.

While the contention of the defendant finds some support in *Moorer v. State of South Carolina,* 368 F.2d 458, and *United States v. Pinkerman,* 374 F.2d 988, we do not agree that under the circumstances of this case the action of the prosecuting attorney violated the defendant's constitutional rights.

■ It is clear that if, following reference to the existence of a statement made to police officers, there is an *in camera* hearing in accordance with *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 and the statement is declared to be voluntary and admissible, then there is no denial of the rights of the defendant as protected by the decision in *Miranda v. Arizona, supra.* This

is so because the inference in the minds of the jurors that the defendant has confessed his guilt is removed by actual knowledge of the contents of the statement.

In the present case, the People cross-examined the defendant on the stand concerning his alleged statements to Officer Goebel. While we discuss the propriety of using such statements during cross-examination later in this opinion, the reference to the substance of the statements made to Officer Goebel was sufficient to inform the jury of what the defendant had related to the officer, and any inference that the defendant had confessed to the crime was dispelled at that time.

■ This is not to say that we approve of the procedure followed by the People. The practice of eliciting testimony that the defendant has made a statement to police officers before a hearing is conducted outside the presence of the jury on the question of voluntariness is fraught with possibilities for abuse, prejudice, and unfairness. The better and safer practice would have been for the trial judge to conduct a hearing on the issue of voluntariness before the jury was aware that the defendant had made a statement.

## II.

At the close of the People's case, the defendant took the stand and testified that he was on his way to visit one of his employers who lived across the street from the store that was robbed and that he was in the store at the time of the robbery for the purpose of buying some lunch meat. On cross-examination, the defendant denied that he had made certain contradictory statements to the arresting officer. Thereupon, the People called as a rebuttal witness Officer Finicle who testified that the defendant told him that he was in the area of the store for the purpose of seeing his girl friend, and that he had stopped in the store to buy some cigarettes. These statements were admitted into evidence for the purpose of impeachment without any determination of their voluntariness by the trial judge.

■ The defendant contends that admission of the statement without a hearing as guaranteed by *Jackson v. Denno, supra,* violated the right of the defendant to due process of law. We agree.

■■ The defendant has a constitutional right at some stage in the proceedings to object to the use of a confession and have a fair hearing and a reliable determination on the issue of voluntariness. *Jackson v. Denno, supra.* In *Whitman v. People,* 170 Colo. 189, 460 P.2d 767, we noted that it is not necessary that there be an express objection by the defendant to the admission of the statements, and that the trial judge is required to conduct a hearing when it becomes evident to him that voluntariness is in issue.

In the present case, when the prosecuting attorney questioned the defendant about statements allegedly made by him to the arresting officer, the defendant denied having made any statements. Instead, he made a reference to the fact that the officer threatened him, and maintained that the statements allegedly made by him were suggested to him by the police officer. In our opinion, the testimony should have indicated to the trial judge at that point that the voluntariness of the alleged statement was an issue. We hold that it was error to admit the statements into evidence without an *in camera* hearing on the issue of voluntariness, and that this case must be remanded to the trial court in order that such a hearing may be conducted. *Compton v. People,* 166 Colo. 419, 444 P.2d 263.

The People argue that an admission, although involuntarily obtained from the defendant in violation of the rules in *Miranda v. Arizona, supra,* may be used for the limited purpose of impeaching the testimony of the defendant who takes the stand to deny his guilt. As support for this argument, the People cite *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503. In *Walder,* the Supreme Court held that certain evidence, obtained as the result of an illegal search in violation of the rights

of the defendant under the Fourth Amendment, could be used by the government for the purpose of impeaching testimony given by the defendant during his prosecution on another charge. The Supreme Court decided that the exclusionary rule could not be invoked to permit the defendant to take the stand and make sweeping and perjurious denials of his guilt.

Some courts have tried to give weight to the *Walder* decision in the area of admissions and confessions. In *Tate v. United States,* 283 F.2d 377, the Court of Appeals for the District of Columbia held on the basis of *Walder* that when the defendant took the stand to deny his guilt, he could be impeached on collateral matters by the use of involuntary statements which were not *per se* inculpatory.

The *Walder-Tate* doctrine was doomed to a short existence. The proposed distinctions between collateral and direct matters and between exculpatory and inculpatory statements were erased by the Supreme Court in *Miranda v. Arizona, supra.* Since *Miranda,* the Court of Appeals for the District of Columbia has held that *Walder* has no application to statements taken in violation of the rules set forth in *Miranda. Proctor v. United States,* 404 F.2d 819. A similar reversal of opinion following the *Miranda* decision was made by the Pennsylvania Supreme Court in an extremely cogent opinion in *Commonwealth v. Padgett,* 428 Pa. 229, 237 A.2d 209, and again in *Commonwealth v. Robinson,* 428 Pa. 458, 239 A.2d 308. Perhaps one of the best expositions of the law that statements taken in violation of the *Miranda* rule may not be used for *any* purpose, including impeachment, appears in *Oregon v. Brewton,* 247 Ore. 241, 422 P.2d 581, *cert. denied* 387 U.S. 943, 87 S.Ct. 2074, 18 L.Ed.2d 1328. In accord with this position are the Courts of Appeals for the Second Circuit, the Ninth Circuit and the Tenth Circuit. *United States v. Fox,* 403 F.2d 97; *Groshart v. United States,* 392 F.2d 172; *Wheeler v. United States,* 382 F.2d 998.

In *Miranda v. Arizona, supra,* the Supreme Court expressly rejected any distinction between exculpatory and inculpatory statements and further stated:

"* * * If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement. * * *" 384 U.S. at 477, 86 S.Ct. at 1629, 16 L.Ed.2d at 725.

The rule of exclusion was declared by that court to be: "* * * But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." 384 U.S. at 479, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

█ To this Court, the language of *Miranda* makes it clear that a statement involuntarily obtained as the result of police interrogation of the defendant cannot be used against the defendant even for the limited purpose of impeachment. While we do not extend the ruling of *Walder v. United States, supra,* to the present case, we are not here questioning its continuing validity in the area of the Fourth Amendment. We hold, therefore, that with respect to the statements testified to by Officer Finicle, an *in camera* hearing must be held to determine whether they were admissible under *Miranda* rules.

### III.

For the purpose of impeachment, the District Attorney conducted the following cross-examination of the defendant:

"Q. You never talked to him [Officer Goebel] about this case?

A. No, sir, outside of he asked me a few questions about this case, and I refused to answer any questions.

Q. You refused to answer any questions?
Q. You merely stated, 'I am confused.'?
A. No, sir."

As we have previously noted, the trial judge had already conducted an *in camera* hearing on the voluntariness of defendant's statements to Officer Goebel and concluded that the statements were inadmissible as evidence. The record of the hearing fully supports the ruling of the judge. There is uncontroverted testimony that the defendant was in the process of exercising his right to remain silent at the time the statement was made, and on the basis of conflicting evidence, the trial judge concluded that the People had failed to prove that an attorney requested by the defendant was actually present at the time of the questioning.

Use of statements taken from the defendant in violation of the rules of *Miranda v. Arizona, supra,* for the purpose of impeaching the defendant's testimony constituted error, as we have previously pointed out. However, we find that under the circumstances of this case, the error is harmless beyond a reasonable doubt and does not require us to reverse the judgment of the trial court.

In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, the Supreme Court held that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. The Court excepted from the harmless error rule violations of constitutional rights that are so basic to a fair trial that their infraction can never be treated as harmless error. The test for harmless error formulated by the court in *Chapman* was reaffirmed by the Supreme Court in *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.

While the Supreme Court has not held that a violation of the rules in *Miranda* may constitute harmless error under certain circumstances, other courts have applied the harmless error test of *Chapman* to cases involving the use as evidence of admissions illegally obtained from

a defendant in violation of *Miranda*. *United States v. Sutt*, 415 F.2d 1305; *Cardwell v. Commonwealth*, 209 Va. 412, 164 S.E.2d 699; *Commonwealth v. Marsh*, 354 Mass. 713, 242 N.E.2d 545; *Commonwealth v. Padgett, supra, Guyette v. State*, 84 Nev. 160, 438 P.2d 244; *Hayes v. State*, 39 Wis. 2d 125, 158 N.W.2d 545, *cert. denied* 394 U.S. 988, 89 S.Ct. 1474, 22 L.Ed.2d 763; *State v. Fleury*, 203 Kan. 888, 457 P.2d 44; cf. *United States v. Tucker*, 415 F.2d 867 (*McNabb-Mallory* violation); *People v. Williams*, 71 Cal. 2d 614, 456 P.2d 633, 79 Cal. Rptr. 65 (*Escobedo* violation).

██ We are of the opinion that where an admission by the defendant is used as evidence in violation of *Miranda*, it is proper to determine whether, under the circumstances of the case, the error was harmless beyond a reasonable doubt. As we have said, in our opinion the facts of this case clearly present an example of harmless error beyond a reasonable doubt.

There was nothing in the exchange of questions and answers that could properly relate in any way to the question of the guilt or innocence of the defendant. The most that could be gleaned from the questions and the defendant's answers was that the defendant was confused at the time Officer Goebel questioned him and he denied even that.

We would note that the same cannot be said of the statements made by the defendant to Officer Finicle should the district court determine that those statements were involuntary and inadmissible. The defendant relied upon his explanation to account for his presence at the scene of the robbery, and statements by him to Officer Finicle which contradicted his story upon the stand related directly to his guilt or innocence.

Accordingly, the judgment is reversed and the cause remanded with directions that the trial court hold an *in camera* hearing to determine the admissibility of statements made by the defendant to Officer Finicle under the tests of voluntariness set forth in *Miranda*

and other cases. If the trial court finds that the statements made to Officer Finicle are admissible under the *Miranda* and other tests, then the judgment and sentence heretofore entered should be reinstated. However, if the trial court should find that the statements to Officer Finicle did not meet the *Miranda* and other tests of voluntariness, the defendant should be granted a new trial.

The judgment is reversed and the cause remanded for further proceedings consonant with the views herein expressed.

MR. CHIEF JUSTICE MCWILLIAMS, MR. JUSTICE DAY and MR. JUSTICE KELLEY concur.