UNITED STATES ex rel. Jerry BERK-
OWITZ, Relator-Petitioner,

v.

John T. DEEGAN, Warden of Auburn
State Prison, Auburn, New York,
Defendant-Respondent.

No. 70 Civ. 2716.

United States District Court,
S. D. New York.

Aug. 27, 1970.

Jerry Berkowitz, pro se.

Louis J. Lefkowitz, Atty. Gen., New
York City, for defendant-respondent;
Burton Herman, Asst. Atty. Gen., of
counsel.

OPINION

EDWARD     WEINFELD,    District
Judge.

Petitioner is presently confined at Au-
burn State Prison, New York serving a
sentence not to exceed five years im-
posed in October, 1968 following his con-
viction for burglary, second degree, aft-
er a trial to a jury in the Supreme
Court, State of New York, County of
New York.   The conviction was af-
firmed without opinion on direct appeal
and leave to appeal to the Court of Ap-
peals was denied.[1]   Petitioner now seeks

1.  People v. Berkowitz, 33 A.D.2d 656, 304 N.Y.S.2d 585 (App.Div.1969).

his release under a federal writ of habeas corpus upon a claim of violation of his federally protected right under the Sixth Amendment to competent and effective counsel at his trial. A review of the record indicates that his claim is without substance.

George Pagiatakis, a permanent guest at the Hotel Manhattan Towers, New York, testified that upon entering his room on the fifteenth floor on the evening of February 20, 1968 he found petitioner inside standing by an open clothes closet. Petitioner was also a tenant at the Hotel but occupied a room on the seventeenth floor. Piled on a bed in Pagiatakis' room were two of his suits, his tuxedo, his overcoat and a jar of coins which were in the closet when he left for work that morning. The layout of the room was such that petitioner's position when Pagiatakis first came upon him could only have been the result of opening the door of the clothes closet. Pagiatakis asked the petitioner what he was doing in the room to which he replied that he had seen the door ajar, had seen someone run out, and had gone in to investigate. Pagiatakis, disbelieving petitioner's story, told him to stop the nonsense and to get into a corner. He then telephoned the hotel manager for assistance. Before the arrival of the manager, petitioner several times asked Pagiatakis "to give him a break, that he didn't do anything." In short order, the manager and another hotel employee entered the room, soon followed by police officer Callery and then within minutes by police officer Cowles. After inquiry as to what had occurred, Callery placed petitioner under arrest and checked petitioner's personal belongings. These included a plastic card of a type which an expert testified is commonly used to insert into a spring lock such as was on the door of complainant's apartment in order to gain surreptitious entry. Pagiatakis further testified that in the presence of the policemen and the hotel employees petitioner again said to him three or four times, "give [me] a break, and don't testify against me", that he

had done nothing wrong. The officers' testimony was to like effect and also that before the petitioner was placed under arrest nothing was said to him except that he was asked to state his pedigree and to empty his pockets. There was also testimony that petitioner's statements to Pagiatakis were voluntary and not in response to questions asked of him; also, that petitioner volunteered a similar statement while in the police car on the way to the station house.

The petitioner was indicted in February, 1968, soon after his arrest and charged with burglary in the third degree. He was represented initially by the Legal Aid Society. Subsequently, a superseding indictment was returned charging him with burglary, second degree, and grand larceny, third degree. Upon his arraignment on the latter indictment on July 10th he asked for and received an adjournment to enable him to retain private counsel. On or about August 26th petitioner appeared with privately retained counsel who requested an adjournment of the trial which was granted to September 3rd.

On the adjourned day, September 3rd, when the case was called for trial, petitioner's counsel announced "the defendant is ready" and jury selection commenced. By the end of the day ten jurors had been selected and the trial was continued to the following morning. Upon the convening of Court the next morning petitioner's counsel, out of the hearing of the ten jurors and the remaining members of the panel, moved for leave to withdraw, stating that the petitioner felt he was not "giving him adequate representation without making an application for an adjournment and preparing motions. I don't know what motions he has in mind." The attorney added he differed from his client as to how the defense should be handled. The Court denied the motion "in the interest of orderly procedure and orderly administration of justice," stating that to grant it under the circumstances would make a mockery of the judicial process. A reading of the record demonstrates that

the trial court was entirely correct. The petitioner had been afforded a fair opportunity to engage private counsel, which he did, and thereafter ample time to prepare for trial.[2] The application for withdrawal of counsel, after the announcement that the petitioner was ready for trial following which ten jurors had been selected and the trial continued overnight, was obviously a ploy for delay and entirely unjustified. If "[j]udges must be vigilant that requests for appointment of a new attorney on the eve of trial should not become a vehicle for achieving delay,"[3] there is even more compelling reason for vigilance to avoid aborting a trial already underway.

■ The claim now advanced of lack of adequate preparation and the alleged incompetence of counsel is specious. The fact that experienced counsel did not spend hours upon hours in conferences with petitioner is no indication of lack of preparation.[4] The amount of time required to prepare a case for trial varies with its nature, depending upon the complexity or simplicity of the issues.[5] The issue presented by the charges against petitioner was simple—whether his presence in the complainant's room was innocent or illicit. The adjournment of over eight days before the trial was scheduled to commence on September 3, 1968 was more than ample

for the most thorough preparation of this issue which clearly would not require extensive investigation or extended conferences with petitioner or other potential witnesses, all of whom were known to petitioner. Obviously the explanation for petitioner's presence in someone else's room in the hotel could have come primarily from himself, were he to have testified as apparently he had decided at one point,[6] and this would not have involved extensive preparation. Nothing has been presented to suggest that in fact the defense was not ready to proceed on September 3 when petitioner's counsel announced, "the defendant is ready." The petitioner fails to specify in what respect it is now claimed that the defense was unprepared or was deprived of any opportunity to meet the prosecution's case. Indeed, on this aspect of petitioner's application it is significant that no affidavit has been submitted by the attorney nor any explanation offered for its absence.[7]

■ As to petitioner's claim that his counsel was incompetent and that he was denied effective representation at the trial, there is not the slightest evidence to support the charge. This conclusory allegation, so freely made, is amply contradicted by the record. A reading of the trial minutes demonstrates that petitioner's counsel, despite the paucity of defense material, conducted an extreme-

2. *Cf.* United States ex rel. Gallo v. Follette, 270 F.Supp. 507 (S.D.N.Y.1967).

3. United States v. Llanes, 374 F.2d 712, 717 (2d Cir.), cert. denied, 388 U.S. 917, 87 S.Ct. 2132, 18 L.Ed.2d 1358 (1967). *See also* United States ex rel. Jackson v. Follette, 282 F.Supp. 993 (S.D.N.Y. 1968), aff'd 425 F.2d 257 (2d Cir. 1970).

4. United States v. Johnson, 269 F.Supp. 767 (S.D.N.Y.1967).

5. United States v. Wight, 176 F.2d 376, 379 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950); United States ex rel. Hardy v. McMann, 292 F.Supp. 191 (S.D.N.Y.1968).

6. Petitioner's counsel in his opening to the jury outlined the defense and finally

stated "the defendant will take the stand and testify from the very beginning chronologically what happened. * * *" However, the defendant did not testify. In fact, when the defense rested without calling any witnesses the prosecution moved to strike the opening statement because "the defendant had succeeded in putting testimony into the record without testifying." The prosecution's motion was denied.

7. *Cf.* United States ex rel. Brooks v. McMann, 408 F.2d 823, 826 (2d Cir. 1969); United States ex rel. Homchak v. New York, 323 F.2d 449, 450 (2d Cir. 1963), cert. denied, 376 U.S. 919, 84 S.Ct. 677, 11 L.Ed.2d 615 (1964).

ly adequate and resourceful defense,[8] effectively cross-examined prosecution witnesses, particularly the complainant and made a reasoned plea to the jury in urging acquittal on a reasonable doubt basis. That the jury was not persuaded by his argument, particularly in a case where powerful evidence supports its verdict, by no means furnishes a basis upon which to level an attack on the competence of counsel.[9]

To void a judgment of conviction for violation of a defendant's right to effective representation by counsel it must appear that the claimed lack of assistance resulted in a trial that was a "farce and mockery of justice."[10] Not only is there not the slightest support for such a charge, but this is not even a case where hindsight reveals tactical or strategic errors as to which conscientious attorneys may differ.[11]

■ The petitioner now taxes his counsel for not objecting to the admission in evidence of his statements to "give him a break" upon a claim that they were introduced in violation of the Miranda rule.[12] However, counsel in his opening to the jury stated that petitioner denied he ever made the statements and that he would testify, which he never did. But more important, the statements do not come within the Miranda rule. They were not only voluntary but were spontaneous utterances.[13] They were first made to complainant prior to the arrival of the police officers while petitioner and complainant were alone in the room and repeated spontaneously after their arrival; they were not in response to any inquiry or police interrogation; they were entirely free from any coercive force or influence, direct or indirect. Indeed, after petitioner had entreated the complainant several times "to give him a break" the police officers told him to keep quiet. So, too, the statement on the way to the station house was a voluntary exclamation and in no respect a result of his being in custody or of any questioning. And finally, even assuming the statements made in the presence of the police officers were constitutionally impermissible, they would not affect those made before the police arrived, and the introduction of the subsequent repetitious statements was harmless error beyond a reasonable doubt.[14]

The petition is dismissed.

---

8. At the close of the State's case he successfully argued for the dismissal of the grand larceny count.

9. *Cf.* United States v. Garguilo, 324 F. 2d 795 (2d Cir. 1963) ; United States v. Duhart, 269 F.2d 113 (2d Cir. 1959).

10. United States ex rel. Maselli v. Reincke, 383 F.2d 129, 132 (2d Cir. 1967) ; United States ex rel. Boucher v. Reincke, 341 F.2d 977, 982 (2d Cir. 1965) ; United States v. Garguilo, 324 F.2d 795, 796 (1963) ; United States v. Wight, 176 F. 2d 376, 379 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950).

11. *Cf.* United States v. Garguilo, 324 F. 2d 795 (2d Cir. 1963) ; United States v. Duhart, 269 F.2d 113 (2d Cir. 1959).

12. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

13. United States v. Compton, 428 F.2d 18 (2d Cir. 1970) ; Parson v. United States, 387 F.2d 944 (10th Cir. 1968) ; Stone v. United States, 385 F.2d 713 (10th Cir. 1967), cert. denied, 391 U.S. 966, 88 S. Ct. 2038, 20 L.Ed.2d 880 (1968).

14. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) ; Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ; United States ex rel. Moore v. Follette, 425 F.2d 925 (2d Cir. 1970) ; United States v. Tucker, 415 F.2d 867 (2d Cir. 1969).