No. 23208.

RONALD EUGENE JORGENSON ALIAS RONALD EUGENE BROWN
*v.* THE PEOPLE OF THE STATE OF COLORADO.
(482 P.2d 962)

Decided March 29, 1971.

WALBERG and PRYOR, PETER W. PRYOR, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, GEORGE E. DEROOS, Assistant, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

THIS writ of error is brought by Jorgenson, hereinafter referred to as the defendant, from his conviction for first degree murder. He received a life sentence.

Defendant's sister called him on the night of August 25, 1966, and told him her common law husband, Philip Morgan, had automobile license plates which belonged to her. She said she had found Morgan at a bar, and asked the defendant to help her get the plates back from him. Defendant and a friend drove out to the bar. Defendant entered and asked Morgan to return the plates. Morgan

refused. Defendant left the bar and went into the parking lot towards his car. At this time Morgan and defendant's sister came out onto the porch of the bar. Morgan began to hit the sister. Defendant reached into the car, took out his pistol, and fired a warning shot over their heads with the hope of frightening Morgan. Morgan jumped off the porch and ran towards defendant. Defendant testified that Morgan shouted that defendant would have to kill him or be killed. Thereupon, defendant shot three times and wounded Morgan. According to defendant, Morgan was still able to reach defendant and fight him for the gun, so defendant fired a fourth and fatal shot to the head. Witnesses for the People testifed that Morgan did not get close enough to defendant to touch him, and that defendant fired until Morgan dropped.

Defendant was convicted for Morgan's murder after a long trial, basing his case solely on self-defense. For reasons set out below, we reverse this conviction, and remand for a new trial.

I.

During the People's rebuttal evidence, one Officer Hesse was called to give expert testimony regarding a nitrite (powder burn) test he had done. Hesse had been qualified as an expert in the area of ballistics earlier in the trial. The procedure Hesse had employed in making the test was to take a piece of the shirt Morgan was wearing at the time of the killing, and test it for nitrite. It showed no nitrite. Hesse then took a similar piece of cloth, started firing at it from a distance of six inches, and moved away until no nitrite appeared. This happened at three and one-half feet. The purpose of introducing this testimony was to show that defendant must have been at least that far away from Morgan when he was shot. If this were the case, defendant's testimony that Morgan reached him, and that the killing was in self-defense was directly impeached.

Defendant argues that in order to be admis-

sible, the test conditions must be substantially similar to the conditions when the shooting occurred. This has been the law of this jurisdiction relating to civil cases. *Kling v. City and County of Denver*, 138 Colo. 567, 335 P.2d 876. We now adopt the same rule for criminal cases. The People agree that this is the proper rule, but contend that differences in conditions here were so minor as not to affect the admissibility of the evidence. We agree with the defendant that in this case the conditions were not substantially similar, and that the evidence was therefore inadmissible.

First and foremost, Hesse tested the shirt in question for nitrite some six months after the shooting. He could not testify as to whether this time difference would affect the fact that he found no nitrites on the shirt. Without this information, the test had no probative value.

Second, different cartridges were used on the test cloth than were in the gun the night of the killing. Hesse could not state what affect this would have on the nitrites found. Third, a different composition cloth was used. Fourth, Hesse did not fire the test shot at angles to determine whether this was relevant.

In conclusion, without evidence by an expert that the time loss and the use of different cartridges made no difference in the result of the test and without a foundation explaining the effects of the difference in conditions, the evidence was inadmissible. We therefore reverse the conviction, and remand for a new trial.

II.

Another policeman, Officer Peters, was called by the People on rebuttal to read from a statement given to him by the defendant in order to impeach defendant's own testimony. Defendant objected to this procedure on the grounds that this statement was not given voluntarily. The trial court ruled that for purposes of impeachment, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (hereinafter cited as *Miranda*), does not apply provided the jury is given a cautionary instruction.

In *Velarde v. People,* 171 Colo. 261, 466 P.2d 919, we held on the authority of many cases, including cases cited by the Courts of Appeals of the Second, Ninth and Tenth Circuits, that when the United States Supreme Court said in *Miranda* that a statement which violated its requirements could not be used for *any* purpose, that, in plain English, prohibits its use for impeachment. *Harris v. New York,* 39 U.S.L.W. 4281 (U.S. Feb. 24, 1971), 401 U.S. 222, 91 S. Ct. 643, 28 L.Ed.2d 1, however, now teaches that such is not the case and that statements taken in violation of *Miranda's* procedural safeguards are admissible for impeachment purposes for reasons stated by the Chief Justice in that opinion. We bow to the United States Supreme Court's interpretation of the language of *Miranda,* and therefore, the holding of *Velarde, supra,* insofar as it deals with the subject is overruled. We therefore find no error in the use of the statement for impeachment.

### III.

■ During the trial, and over the objection of the defendant, pictures of Morgan were admitted into evidence. These pictures depict Morgan's wounds as he was at the scene of the killing, and later at the morgue. Defendant argues that since he admits to the killing, relying solely on self-defense, it was improper to admit these pictures. We disagree. Pictures can be admitted to show anything a witness would be allowed to testify about. *Wooley v. People,* 148 Colo. 392, 367 P.2d 903. Certainly a doctor could testify to the location of the wounds, and the cause of death. The fact that defendant admitted the killing does not prevent the state from showing the circumstances surrounding it. These pictures were properly admitted.

■ Defendant also objected to the admission into evidence of the clothing worn by Morgan the night of the killing. Defendant argues that this clothing had no probative value, and should have been rejected. We disagree. The fact that a piece of real evidence may be

cumulative does not of itself render it inadmissible. *Lira v. People,* 166 Colo. 498, 445 P.2d 62. In order to be material and relevant, real evidence must only be connected with the perpetrator, the victim, or the crime. *Washington v. People,* 158 Colo. 115, 405 P.2d 735. We feel this clothing meets these tests, and was properly admitted. Other errors alleged by the defendant have no material substance and will not be discussed.

The judgment is reversed and the cause remanded for a new trial.