(No. 42138.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MICHAEL MOORE, Appellant.

*Opinion filed March 20, 1973.*

GOLDENHERSH, J., concurring in part and dissenting in part.

RAYMOND E. HARTH, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and ROBERT C. SAMKO, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

The defendant, Michael Moore, was convicted of murder in the circuit court of Cook County. He was sentenced to serve a term of not less than 30 years nor more than 45 years in the penitentiary. The appeal from this judgment was instituted before July 1, 1971, under our Rule 603 as it existed at that time (43 Ill.2d R. 603). The rule then provided that appeals involving constitutional questions would lie directly to this court.

On September 29, 1966, the defendant was 17 years old. Paul Powell, a witness for the State, stated that he had known the defendant for 14 years and that at approximately 5 P.M. on that date had met the defendant in an alley. The defendant told him he was going to the playground to shoot "some Rangers." They walked to the corner of 67th and University, where they sat on the steps of a building. The defendant then took an automatic pistol from his pocket. While they were sitting there a boy walked past and the defendant said he was going to shoot him, but Powell convinced him that he should not. Later a boy passed by on a bicycle traveling east on 67th Street. About 15 minutes later the same boy returned westbound on his bicycle. The defendant jumped up and ordered him to stop. At this time the victim was about 30 feet away and failed to stop. The defendant ran into the street and fired three or four shots. The boy fell from his bicycle.

Powell testified he could not see if the boy was dead. The defendant immediately ran north on University Avenue. Powell walked north on the same street for about a third of the block where he stopped to talk to some friends. About 15 minutes later he returned to the scene of the shooting and saw the body of the victim on the street about one block west of the place where the shots were fired.

Raymond Hall also testified as a witness for the State. He said that at about 5:50 the same evening the defendant came to his home and gave him a .25 caliber automatic pistol to keep for him. The defendant told Hall that he had just shot someone. Hall did not believe him, but after he learned that someone had been shot he threw the gun away.

About 9 o'clock that evening Officer Dudak and two other members of the police department went to the defendant's residence. They explained to the defendant's mother that they wanted to determine if her son had any information concerning the murder. They took the defendant to the police station where he was questioned with a number of other boys and permitted to return home. The following day at about 5 P.M. Officer Dudak and another officer again went to the defendant's home and placed him under arrest. His parents were not home at that time.

At the police headquarters the defendant was interrogated in the presence of Office Dudak and the witness, Paul Powell. In the course of the interrogation the defendant gave an oral statement which substantially conformed to the testimony Powell and Hall later gave at the trial. An assistant State's Attorney was called to question the defendant and to take a written statement. The parents of defendant were present when the assistant State's Attorney arrived, and his mother stated she wanted an attorney for her son. The defendant did not give a written statement to the assistant State's Attorney.

Prior to the trial a motion was made to suppress the

oral confession alleging that the defendant had not been properly advised of his constitutional rights as required by *Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.* The motion did not allege that the statement was coerced or involuntary. A hearing on the motion was held, at which time the officers testified as to the warnings given to the defendant and the defendant testified that he was not warned. At the conclusion of the hearing the trial court denied the defendant's motion to suppress the oral statement. We need not review the trial court's determination concerning the warnings given to the defendant. The State did not use the oral statement as evidence during the presentation of its case. It was not used until after the defendant had taken the stand in his own defense. On rebuttal, it was used for impeachment purposes.

In his direct testimony the defendant stated that he was at home during the period of time about which Powell and Hall had testified. He stated he did not tell Powell he was going to the playground and shoot some Rangers. He denied having a gun on that day. He denied sitting on the steps of the building on University Avenue with Powell and showing him a pistol. He denied threatening to shoot a boy who walked past and he denied shooting at a boy on a bicycle. He also denied asking Hall to keep the gun for him and denied telling Hall that he had shot someone.

On cross-examination the defendant was asked about certain statements he had made to the police officers at the station on the afternoon of September 30, 1966. He denied telling the officers that he had been talking to Powell on the day of the shooting; he also denied that he had met Powell on 67th Street near University that day, and he denied that he had shown Powell a gun. He said he told the officer that the gun went off accidentally. He denied telling the officers that he went to Hall's home after the shooting, and he denied talking to Hall or giving him the gun.

On rebuttal the State called Officer Dudak, who

testified as to the statements which the defendant had made in his presence at the police station on the afternoon of September 30, 1966, which were inconsistent with the defendant's direct testimony and which the defendant on cross-examination had denied making. The defendant now contends that the use of his oral statement violated his constitutional rights as set forth in *Miranda v. Arizona.* We find that it did not.

In *Harris v. New York, 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643,* the Supreme Court held that a statement taken from the defendant, though not admissible in evidence under *Miranda v. Arizona,* could nonetheless be used for impeachment of defendant after he had taken the witness stand and testified contrary to the content of his previous statement. "Having voluntarily taken the stand, [defendant] was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process." (401 U.S. 222, 225.) (See also *People v. Byers, 50 Ill.2d 210.*) The defendant does not contend that his oral statement was coerced or involuntarily given. The motion to suppress was based solely on the inadequacy of the *Miranda* warning. Since the statement was not used as evidence against the defendant but was used solely for purposes of impeachment, under the ruling of *Harris* we need not decide whether adequate *Miranda* warnings were given.

The defendant complains that the questions asked of him on cross-examination were "vicious insinuations of criminal misconduct." We find that there was no error in this method of cross-examination. A familiar mode of impeaching a witness is by showing that he has at some time prior to the trial made a statement inconsistent with his testimony. It is proper on cross-examination to ask him if he had made such a prior inconsistent statement. If he denies having done so, it is incumbent upon the cross-examiner to offer evidence that such a statement was, in

fact, made. *People v. Burbank, 53 Ill.2d 261, 269; People v. Henry, 47 Ill.2d 312, 321;* McCormick, Handbook of the Law of Evidence (2d ed. 1972) 72-78.

The defendant contends that the prosecution should have called Powell and Hall to prove the truth of the alleged statement of the defendant. For the purpose of impeachment, it is unnecessary to prove the truth of the contents of the prior statement. The purpose of the impeachment is to weaken or destroy the credibility of the witness. This may be accomplished by showing that at some time prior to his testimony he had made a statement contrary to that to which he has testified. *People v. Moses, 11 Ill.2d 84.*

For the reasons stated we find the defendant's contentions untenable. The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

MR. JUSTICE GOLDENHERSH, concurring in part and dissenting in part:

I concur in the result in this case but dissent from that portion of the opinion which states: "Since the statement was not used as evidence against the defendant but was used solely for purposes of impeachment, under the ruling of *Harris* we need not decide whether adequate *Miranda* warnings were given."

For the reasons so eloquently stated by Mr. Justice Brennan in his dissenting opinion in *Harris v. New York, 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643,* I believe that case to be erroneously decided, and this court, as we are free to do (*Cooper v. California, 386 U.S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788*), should prohibit the use, for any purpose, of a statement taken in violation of *Miranda.* I concur in the result here for the reason that an examination of the record shows that the defendant was given adequate warnings by the police officers. I further point out that my failure to express my views on this matter at

the time that this court decided *People v. Byers, 50 Ill.2d 210,* stems not from acquiescence in what was there said but from the fact that the statements in *Byers* relevant to *Harris* are *dictum.*