341 A.2d 62

**COMMONWEALTH of Pennsylvania**

v.

**Lawrence TRIPLETT, Appellant.**

Supreme Court of Pennsylvania.
Argued Jan. 13, 1975.
Decided May 13, 1975.
Rehearing Denied July 7, 1975.

Nicholas J. Nastasi, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Jr., Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Bonnie Leadbetter, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Lawrence Triplett, a Philadelphia police officer, was tried by a judge sitting without a jury and found guilty of burglary, larceny and receiving stolen

goods. Post-trial motions were denied and appellant was sentenced to a term of one and one-half to five years in a state correctional institution. An appeal to the Superior Court resulted in an affirmance of appellant's conviction. We granted allocatur and now reverse.

The facts surrounding this appeal are as follows: On December 25, 1971, a burglary occurred at the Delmonico warehouse in the City of Philadelphia. Appellant and another police officer, in response to a radio call, proceeded to the warehouse. After their arrival at the scene, appellant and a fellow officer, finding no one in the warehouse, removed for their own benefit eight television sets. During the course of the removal of the television sets, appellant and his fellow officers were confronted by other members of the Philadelphia police force, who at trial testified that they saw appellant assist in the removal of the television sets. As a result of this conduct, appellant was taken before his police superiors and questioned. He was then arrested and convicted of the crimes of burglary, larceny and receiving stolen goods.

We granted allocatur in this case to determine whether the decision of *Harris v. New York,* 401 U.S. 222, 91 S. Ct. 643, 28 L.Ed.2d 1 (1971) is applicable to the instant case, and whether this jurisdiction should follow the ruling of *Harris.*

The *Harris* decision became relevant in the instant case in the following manner. As a result of appellant's actions at the Delmonico warehouse, he was called to police headquarters and questioned by his superiors. Before the questioning of appellant began, he was given "charter warnings," which consisted of "I wish to inform you that this is an official investigation, and under the provisions of the Philadelphia Home Rule Charter, Section 10–110, you are required to cooperate fully and

answer all questions. Do you understand?" Section 10–110 of the Philadelphia Home Rule Charter reads as follows:

"If any officer or employee of the City shall willfully refuse or fail to appear before any court, or before the Council, or any committee thereof, or before any officer, department, board, commission or body authorized to conduct any hearing or inquiry, or having appeared, shall refuse to testify or to answer any question relating to the affairs or government of the City or the conduct of any City officer or employee on the ground that his testimony or answers would tend to incriminate him, or shall refuse to waive immunity from prosecution on account of any matter about which he may be asked to testify before such court or at any such hearing or inquiry, he shall forfeit his office or position, and shall not be eligible thereafter for employment to any position in the City service".

Lt. Margulis, who conducted the initial questioning of appellant, stated that appellant, through his police training, was completely familiar with Section 10–110 of the Philadelphia Home Rule Charter and the consequences of a police officer's failure to answer the questions posed to him. As a result of the initial interview, appellant made certain admissions concerning his participation in the warehouse incident. Subsequent to the interview preceded by the charter warnings, appellant was given full *Miranda* warnings and made statements again admitting his participation in the warehouse burglary. Appellant filed a pre-trial motion to suppress all statements he gave during the interview preceded by charter warnings and those statements preceded by *Miranda* warnings. The suppression court, on the basis of *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) and *Commonwealth v. Ware*, 438 Pa. 517, 265 A.2d 790 (1970), suppressed all statements made by appellant. However, at trial the Commonwealth, on the basis of

*Harris, supra,* used the suppressed statements to impeach appellant's trial testimony.

Initially, we must point out that in our opinion, the statements made by appellant which were preceded by the charter warnings were properly suppressed by the court below. In *Garrity, supra,* the Supreme Court of the United States was presented with the issue of whether statements made by a police officer, who was compelled to answer questions based on a statute similar to the Philadelphia Home Rule Charter, Section 10–110, were inadmissible at a state criminal trial of the officer. We are in agreement with the rationale of *Garrity* and, therefore, conclude that the initial statements were properly suppressed. The court below then held that appellant's statements which were made after he was given his *Miranda* warnings were also inadmissible because the statements, although preceded by *Miranda* warnings, were directly related to the prior constitutionally infirm statements and, therefore, inadmissible as being the product of the prior constitutionally infirm statements. We also agree with that determination. Moreover, the Commonwealth, in this appeal, does not dispute the propriety of the suppression court's decision, but only argues that *Harris* should be and is the law of this Commonwealth.

Since this court has not directly spoken on the issue of whether *Harris* is to be applied in this Commonwealth, we feel it necessary to decide the issue in terms that will resolve the question in *all* situations. In *Harris,* the Supreme Court of the United States allowed the use of constitutionally infirm statements to impeach the credibility of a criminal defendant's trial testimony if the infirm statement was obtained under circumstances that would not detract from the trustworthiness of the statement.

We are of the opinion that any statement of a defendant declared inadmissible for any reason by a suppres-

sion court cannot be used for the purpose of impeaching the credibility of a defendant who elects to testify on his own behalf at trial. This result is premised upon the logic espoused in the concurring opinion in *Commonwealth v. Woods*, 455 Pa. 1, 7, 312 A.2d 357, 360 (1973) wherein Mr. Justice Roberts, joined by the writer of this opinion and Mr. Justice Nix, stated:

> "Harris-type use of constitutionally infirm confessions forces upon an accused a grisly Hobson's choice. Either an accused must forgo his right to testify, or he must risk the sure and devastating prejudice occasioned by the prosecution's use of the impermissibly obtained confession at the critical rebuttal stage."

Lastly, we must point out that our prohibition against the use of constitutionally infirm statements to impeach the credibility of a criminal defendant testifying in his own behalf is premised upon Pennsylvania Constitution Article I, Section 9, P.S.

Judgment of sentence reversed, and case remanded for proceedings consistent with this opinion.

POMEROY, J., filed a concurring opinion.

JONES, C. J., filed a dissenting opinion.

EAGEN, J., filed a dissenting opinion.

POMEROY, Justice (concurring).

I agree that the Commonwealth's use for impeachment purposes at trial of the particular incriminating statements here involved, which had been obtained from appellant by unconstitutional means, constituted a violation of Lawrence Triplett's privilege against self-incrimination. I therefore concur in the order of the Court. In my view, however, this result is compelled by the Fifth Amendment of the Constitution of the United States, for I do not find that *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) is instantly controlling.

Since I see no need to base the Court's decision on a rejection of *Harris*, there is, by the same token, no need to premise it on the Constitution of Pennsylvania.

Review of the facts of this case together with the grounds upon which appellant's statements were suppressed by the trial court, reveals the inapplicability of *Harris*. At issue before the suppression court were two sets of incriminating statements which appellant had made to the police. The first set of admissions was elicited after the police had given appellant, a Philadelphia police officer, the so-called "Charter warnings" as required by section 10–110 of the Philadelphia Home Rule Charter.[1] In *Garrity v. New Jersey*, 385 U.S. 493, 87 S. Ct. 616, 17 L.Ed.2d 562 (1967), the Supreme Court of the United States held that incriminating statements made by a police officer who had received statutory warnings similar to those prescribed by the Philadelphia Charter were involuntary and hence inadmissible in a state criminal proceeding against him. The constitutional vice in such warnings is that they afford an accused the intolerable and inherently coercive option between the giving of testimony which may be incriminating, on the one hand, and forfeiture of his job with the governmental unit which employs him on the other hand. "The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent." *Garrity v. New Jersey, supra* at 497, 87 S.Ct. at 618. "Where the choice is 'between the rock and the whirlpool', duress is inherent in deciding to 'waive' one or the other." *Ibid.* at 498, 87 S.Ct. at 619. So in the instant case, the Charter warnings make the price of invoking the privilege not to be a witness against oneself—a privilege guaranteed by the Fifth Amendment of the federal constitution—the sacrifice of one's job with the City of Philadelphia.

1. The text of section 10–110 is set forth in the majority opinion, ante at 63–64.

The suppression court below, in reliance upon *Garrity,* held Triplett's initial statements, given directly after the Charter warnings, to be involuntary and ordered that they be suppressed. No one disputes that this was a correct ruling. The court then determined, on the basis of *Commonwealth v. Ware,* 438 Pa. 517, 265 A.2d 790 (1970) that the second set of statements, although preceded by *Miranda* warnings, was nevertheless also inadmissible as the product of exploitation of the prior illegality. In *Ware* that illegality was prolonged interrogation without the giving of any warnings. We there applied the "fruit of the poisonous tree" doctrine as enunciated in *Wong Sun v. United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963) and held the post-warning statements inadmissible. In a number of similar cases this Court has recognized that once the police have unconstitutionally obtained substantially inculpatory admissions from an accused, he is afflicted with a psychological vulnerability to further questioning which the giving of *Miranda* warnings will not *necessarily* alleviate. See e. g. *Commonwealth v. Whitaker,* 461 Pa. 407, 336 A.2d 603 (1975) [filed March 11, 1975]; *Commonwealth v. Bartlett,* 446 Pa. 392, 288 A.2d 796 (1972); *Commonwealth v. Mitchell,* 445 Pa. 461, 466, 285 A.2d 93, 96 (1971); *Commonwealth v. Frazier,* 443 Pa. 178, 181, 279 A.2d 33, 35 (1971); *Commonwealth v. Marabel,* 445 Pa. 435, 447–48, 283 A.2d 285, 290 (1971); *Commonwealth v. Moody,* 429 Pa. 39, 44, 239 A.2d 409, 412 (1968). See also *United States v. Bayer,* 331 U.S. 532, 540, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654, 1660 (1947), wherein the Supreme Court of the United States stated: ". . . after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as

fruit of the first." The issue in each instance is whether the admissions which succeed the *Miranda* warnings are "sufficiently an act of the free will" of the accused. *Commonwealth v. Bishop*, 425 Pa. 175, 182–83, 228 A.2d 661, 666 (1967). If the answer is that they are not, but rather are the product of mental or psychological coercion, then, of course, the statements must be suppressed as involuntary.

In the instant case it is precisely this conclusion at which the suppression court arrived—I believe correctly—with regard to appellant's final admissions, and it is for this reason that *Harris v. New York* is inapplicable here. The statements in issue in *Harris* were not coerced or involuntary in any traditional sense. Rather, they were inadmissible in the State's case in chief solely because they had been obtained without all of the prior warnings which are required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Harris, supra*, 401 U.S. at 224, 91 S.Ct. at 645, 28 L.Ed.2d at 4.[2] In holding that statements of this latter class are constitutionally useable on cross-examination for the limited purpose of impeaching the credibility of a defendant who testifies in his own behalf, the Court gave no intimation that the result would be the same were the statements defective on grounds such as actual physical or psychological coercion.[3] The Court pointed out that

2. The non-compliance with *Miranda* was that the detectives did not advise the accused of his right to appointed counsel at the interrogation.

3. On the contrary, some scholars have suggested that by negative implication the Court revealed its view that statements which had been coerced or were involuntary would be inadmissible for any purpose. See Dershowitz & Ely, Harris v. New York: Some Anxious Observations on the Candor and Logic of the Emerging Nixon Majority, 80 Yale L.J. 1198, 1201–08 (1971). In its most recent application of the *Harris* rule, the Court has again indicated that a distinction should be drawn between statements obtained in violation of *Miranda* and those which are involuntary or coerced. *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) ("There is no evidence or suggestion that Hass' state-

"[p]etitioner makes no claim that the statements made to the police were coerced or involuntary," and it qualified the use of the challenged evidence by the proviso "that the trustworthiness of the evidence [must satisfy] legal standards." *Harris, supra,* at 224, 91 S.Ct. at 645.

In the case at bar appellant's second confession was not constitutionally infirm because it had been obtained in violation of *Miranda;* appellant had received all of the warnings required by that case prior to his making of the statement. These admissions were suppressed because, notwithstanding compliance with *Miranda,* they were not given voluntarily, i. e. they were not the product of Triplett's own free will but rather were the inevitable consequence of the exploitation of his first inculpatory—and involuntary—admissions.

Under these circumstances, and in the absence of evidence to the contrary, I am satisfied that the use made by the Commonwealth of any of the suppressed statements was a violation of appellant's rights under the Fifth Amendment to the United States Constitution. Whether this Court will accept or reject the *Harris* rationale as a matter of state law is a question which it is not necessary or proper to reach in this case. The interests of uniformity in the development of basic principles of constitutional law involving, as in this case, rights which are expressed in identical terms in state and federal constitutions, together with the deference that is due the pronouncements of the Supreme Court of the United States, indicate that we should chart a separate course only where compelling reasons for doing so are advanced. No such reasons have been presented in this case.[4] As

ment to Officer Osterholme on the way to Moyina Heights was involuntary or coerced." *Ibid.* at 722, 95 S.Ct. at 1221.)

4. Indeed, the appellant, while urging us not to follow *Harris v. New York,* concedes that "this case is not a proper one in which the rule in the *Harris* case may be applied." His argument continues: ". . . there is no indication of the affirmative use of perjurious testimony in reliance on the Commonwealth's inabil-

this Court has done in the past, see *Commonwealth v. Woods*, 455 Pa. 1, 312 A.2d 357 (1973), I think we should avoid crossing the *Harris* bridge until we squarely come to it.

EAGEN, Justice (dissenting).

The trial in this case was nonjury. The evidence of guilt was overwhelming. Even assuming the trial court erred in permitting the appellant to be cross-examined concerning prior inconsistent statements which had been suppressed pretrial, I am convinced the error was harmless under the circumstances.

JONES, Chief Justice (dissenting).

I agree with the dissenting view of my colleague, Mr. Justice Eagen, that there was no reversible error in this case in which a jury trial was waived. I would go further, however, and apply fully in this Commonwealth the doctrine of *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954).[1] *Miranda* warnings serve a deterrent function by virtue of the attached exclusionary remedy. "[S]ufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief." *Harris*, 401 U.S. at 225, 91 S.Ct. at 645. It can hardly be assumed that impermissible police activity will be encouraged by allow-

ity to impeach the appellant's testimony. His credibility was effectively impeached by prior testimony and the appellant realized this even before he took the stand." Appellant's brief at pp. 7, 9.

1. *Harris* was a logical extension of the *Walder* rationale, which held that suppressed *tangible* evidence could be used to impeach the credibility of the accused. This Court approved the *Walder* doctrine in *Commonwealth v. Wright*, 415 Pa. 55, 202 A.2d 79 (1964). Although *Wright* stood for the proposition that the *Walder* collateral use exception would not be extended to cover suppressed statements, in light of the United States Supreme Court's more recent enunciations in *Harris*, this Court's inconsistency seriously jeopardizes the continued vitality of *Walder* in this Commonwealth.

ing the prosecution to impeach the credibility of the defendant by use of suppressed tangible evidence and statements. The waiver by the defendant of his right against self-incrimination at trial is clearly one which is unforeseeable by the police during their investigation.

The majority's holding will only lead to the perpetration of obvious lies in court. The prosecution has already been penalized in its case in chief, and there is no reason that our exclusionary rules should be used as a tool to defraud the fact-finder at trial. I fear that the majority opinion puts the Court's imprimatur upon perjury.[2]

2. The New York rule adopted by the United States Supreme Court in *Harris* has been adopted or cited with approval in the following jurisdictions: *State v. Johnson*, 109 Ariz. 70, 505 P.2d 241 (1973); *Rooks v. State*, 250 Ark. 561, 466 S.W.2d 478 (1971); *People v. Acosta*, 18 Cal.App.3d 895, 96 Cal.Rptr. 234 (1971); *Jorgenson v. People*, 174 Colo. 144, 482 P.2d 962 (1971); *State v. Darwin*, 29 Conn.Sup. 423, 290 A.2d 593 (Conn.Super.1972); *Williams v. State*, Del.Supr., 301 A.2d 88 (1973); *State v. Retherford*, 270 So.2d 363 (Fla.1972); *Campbell v. State*, 231 Ga. 69, 200 S.E. 2d 690 (1973); *People v. Moore*, 54 Ill.2d 33, 294 N.E.2d 297 (1973); *Johnson v. State*, Ind., 284 N.E.2d 517 (1972); *State v. Martin*, Iowa, 217 N.W.2d 536 (1974); *State v. Osbey*, 213 Kan. 564, 517 P.2d 141 (1974); *State v. Williams*, La., 271 So.2d 857 (1973); *State v. Gervais*, Me., 317 A.2d 796 (1974); *Sabatini v. State*, 14 Md.App. 431, 287 A.2d 511 (1972); *Commonwealth v. Harris*, Mass.App., 295 N.E.2d 687 (1973); *People v. Graham*, 386 Mich. 452, 192 N.W.2d 255 (1971); *State v. Gabler*, 294 Minn. 457, 199 N.W.2d 439 (1972); *Sanders v. State*, Miss., 260 So.2d 466 (1972); *State v. Yowell*, 513 S.W.2d 397 (Mo.1974); *State v. Bazis*, 190 Neb. 586, 210 N.W.2d 919 (1973); *Stone v. Shea*, 113 N.H. 174, 304 A.2d 647 (1973); *State v. Davis*, 127 N.J.Super. 55, 316 A.2d 61 (1974); *State v. Evans*, 17 N.C.App. 561, 195 S.E.2d 102 (1973); *State v. Iverson*, 187 N.W.2d 1 (N.D.1971); *State v. Kassow*, 28 Ohio St.2d 141, 277 N.E.2d 435 (1971); *Criss v. State*, 507 P.2d 935 (Okl.Cr.1973); *Brewer v. State*, Tenn., 501 S.W.2d 280 (1973); *State v. Kish*, 28 Utah 2d 430, 503 P.2d 1208 (1972); *Riddell v. Rhay*, 79 Wash.2d 248, 484 P.2d 907 (1971); *Ameen v. State*, 51 Wis.2d 175, 186 N.W.2d 206 (1971). *Contra, State v. Santiago*, 53 Haw. 254, 492 P.2d 657 (1971). Texas has rejected *Harris* on the basis of a statutory rule. *Butler v. State*, 493 S.W. 2d 190 (Tex.Cr.App.1973). Oregon retains a pre-*Harris* rule which is contraposed to *Harris. State v. Brewton*, 247 Or. 241, 422 P.2d 581, cert. denied, 387 U.S. 943, 87 S.Ct. 2074, 18 L.Ed.2d 1328 (1967). A recent case decided by the Oregon courts on federal constitutional grounds which distinguished *Brewton, supra*,

Furthermore, in response to Mr. Justice Pomeroy's concurring opinion, I am compelled to state that the *Harris* rationale is applicable to a case not only where the inadmissible statement is a product of defective *Miranda* warnings but also where the confession is involuntary. If the Commonwealth utilizes a confession for impeachment purposes, it is open to the defendant on re-direct examination to rehabilitate himself by demonstrating the circumstances which allegedly resulted in the involuntary statement. Any statement to the contrary in *Harris* and *Oregon v. Hass, supra,* note 2, was merely dicta. The admission of any statement under the *Harris* rule is to effect credibility only and is not admitted to show the truth of such statement.

and *Harris* was overruled by the United States Supreme Court, which reaffirmed the *Harris* doctrine. *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975).