## Bass v. Philadelphia

*Herbert Ocks,* for plaintiff.
*Gerald T. Clark,* for defendant.

BULLOCK, *J.,* January 31, 1978—Plaintiff, having sued the city, alleging brutality by the police, has filed a request for the production of certain reports, statements, summaries or memoranda made in connection with the incident of August 24, 1975, which is the subject of the present suit. Plaintiff is, of course, not in a position to know what documents were prepared by the city regarding the incident. The city's response is essentially that, except for a Police "49" report of a police sergeant's complaint of aggravated assault and battery on him, which has been furnished to plaintiff's counsel, whatever documents were prepared were prepared in anticipation of litigation and are, therefore, not discoverable. The city, in its brief, also contends that plaintiff's request is made in bad faith. No facts are alleged to support this contention. The contention was not made in the conference which the court had with counsel, nor are we able to find such a contention pleaded. Moreover, plaintiff's request appears to be prima facie a reasonable effort to investigate in anticipation of trial. Under the circumstances, we do not believe we are required to consider this contention. The city also contends that the documents sought are subject to a protective order in the United States Court for the Eastern District of Pennsylvania; however, we do not believe that we are bound by any such order in this proceeding.

Plaintiff relies on Pa. R.C.P. 4009, which provides as follows:

"Right to Inspection.

"Subject to the limitations provided by Rule 4007(a) and Rule 4011, the court, on the motion of a party may

"(1) order a party to produce and permit the inspection, including the copying and photographing by or on behalf of the petitioner, of designated tangible things, including documents, papers, books, accounts, letters, photographs and objects, which are in his possession, custody or control; or

"(2) order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspection, including measuring, surveying and photographing the property or any designated object or operation thereon."

The city relies upon Pa. R.C.P. 4011, which provides as follows:

"Limitation of Scope of Discovery and Inspection.

"No discovery or inspection shall be permitted which                                     .

"(a) is sought in bad faith;

"(b) causes unreasonable annoyance, embarrassment, expense or oppression to the deponent or any person or party;

"(c) relates to matter which is privileged or would require the disclosure of any secret process, development or research;

"(d) would disclose the existence or location of reports, memoranda, statements, information or other things made or secured by any person or party in anticipation of litigation or in preparation for trial or would obtain any such thing from a party or his insurer, or the attorney or agent of either of them, other than information as to the identity or whereabouts of witnesses;

"(e) would require the making of an unreasonable investigation by the deponent or any party or witness; or

"(f) would require a deponent whether or not a party, to give an opinion as an expert witness, over his objection."

This is a case in which the claim is essentially one of governmental criminal abuse of power. Such a claim raises problems not inherent in ordinary litigation between citizens, especially where the claim is against an agency itself involved in law enforcement. We believe that any such claim of criminal conduct should be investigated and, if appropriate, prosecuted as diligently as any other alleged crime. The police department, according to defendant's brief, has a special method of investigating crimes or misconduct alleged against police officers. Such an investigation is made by the Internal Affairs Unit of the department. The fact that a special procedure is used, however, does not alter the basic nature of the investigation, nor does the fact that the results of the investigation may be used as a basis for disciplinary action within the department. Such an investigation is part of the department's duty of investigating charges of crime. It is inherent in the law enforcement process that where a crime is reported to the police, they make at least a preliminary investigation to determine whether a charge is founded. Both general law enforcement and departmental discipline require such a determination in case of allegations against police officers. Such investigations are conducted at public expense and for the public benefit in pursuit of enforcement of the law. Such an investigation, fairly conducted, cannot be in anticipation of litigation,

in the sense of being conducted for the purpose of aiding the city to defeat in a court any charge made by a citizen against a police officer. By its very nature, it is an investigation for the purpose of determining whether, in fact, the officer charged, at least prima facie, violated the law. Moreover, a citizen allegedly the victim of police misconduct is just as interested a party as any other citizen allegedly the victim of a crime. The latter has the opportunity to see the various stages of criminal law enforcement at work; the former should have no lesser right.

We tend in this country to take for granted the fact that our courts are "open" and that "Star Chamber" judicial proceedings are constitutionally prohibited. Our founding fathers in adopting the Declaration of Independence and the United States Constitution were very conscious of the problem of governmental abuse of power. They had had bitter experience with King George III's officials and soldiers. History, in recent years, has highlighted the extent to which governmental power may be abused. It has also demonstrated the obvious fact that once governmental power is abused, there is likely to be further abuse in "covering up" the original abuse.

The case of United States v. Nixon, 418 U.S. 683, 904, 909 (1974), decided by the United States Supreme Court, will probably prove to be one of the greatest historical significance, in that the judicial branch of government refused to permit the executive branch to conceal its abuses and, hence, escape public accountability by claim of executive privilege.

Thus, the issue before us, dealing as it does with a claim of abuse of power by the executive branch

of government and the potential further abuse by concealing an alleged original abuse, is a grave one. We are in no sense prejudging the merits of plaintiff's claim in this instance; we are, however, concerned rather with interpreting and applying applicable law in light of the fundamental principle of "checks and balances" inherent in our form of government.

Another legislative provision, we believe, is relevant. Section 5.5-1104 of the Philadelphia Home Rule Charter provides as follows:

"Public Right to Inspection. City records, the disclosure of which would invade a person's right to privacy, hinder law enforcement, endanger the public safety, or breach a legally recognized duty of confidence, or the nondisclosure of which is legally privileged, or which have been prepared for or by the Law Department for use in actions or proceedings to which the City is or may be a party, shall not be available for public inspection. Except as herein provided, all other City records shall be open for public inspection but the officer, department, board or commission or other governmental agency of the City having the care and custody of such records may make reasonable regulations governing the time, place and manner of their inspection and for the purposes of archival preservation, copies of City records may be substituted in lieu of original records."

The annotation to this section provides, in part, as follows: "Purposes: Records of the City relate to the government of the City and for that reason those governed should have a right to inspect them." It will be noted that the charter provision is more restrictive than Pa. R.C.P. 4011 in that, as to the city, it protects as material "in anticipation of litigation" only that "prepared by or for the Law

Department." It does not relate to material prepared by any city department as an aspect of its own function. Proceedings of the Police Department's Internal Affairs Unit or any other departmental investigation are thus not protected by the charter when the investigation is based on a citizen's complaint of police impropriety.

The principle established by the United States Supreme Court in Brady v. Maryland, 373 U.S. 83 (1963), we also believe has application in a case of this kind. Brady was a criminal case in which it was held: "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

Logically, Brady is as applicable to civil cases involving a charge of governmental abuse of power as to criminal cases. Both situations represent a contest between the government and a private citizen. In both situations, the government has the benefit of vast investigative machinery in contrast to the individual's presumably more limited resources. Brady holds, in essence, that where the governmental investigative machinery has developed evidence favorable to an accused, it would be basically unfair not to require the government, upon request, to turn over such information to the accused. Where, as in the present case, there is a charge of governmental abuse, not only would it be unfair to the complaining citizen to permit the government to conceal evidence of such an abuse, but also the public interest requires that the government not be permitted to conceal governmental abuse of power.

It is thus our conclusion that any records of the

police department involving a charge of abuse against a police officer, including but not limited to statements, transcripts of any departmental hearing, investigative reports and recommendations, are "City records" under section 5.5-1104 of the Philadelphia Home Rule Charter and are subject to public inspection, not merely inspection by a person charging police abuse. Sound public policy, even were it not manifest in section 5.5-1104 of the City Charter, would require such a result; where such a charge has been made, the public has a right to know what was done by the department.

We do not ignore the restrictive provisions of either section 5.5-1104 of the Charter or Rule of Civil Procedure 4011. We do hold, however, that no legal privilege exists which would automatically protect police records of investigation of charges of improper conduct against a police officer against public disclosure. Where, however, the city alleges that such disclosure is sought in bad faith or would invade an individual's right to privacy, hinder law enforcement, endanger public safety, cause unreasonable annoyance, embarrassment or expense to the city, or require the disclosure of any secret process, development or research, such matters should be pleaded by the city in response to a plaintiff's motion for discovery and resolved by the court in due course. Such a resolution might well require in camera examination by the court of disputed material.

The city characterizes the material sought by the plaintiff as documents and records "made at the specific request of the District Attorney's Office and were a confidential investigation by the police Internal Affairs Unit made in anticipation of

criminal litigation and for the anticipated civil litigation." Obviously, any investigation requested by the district attorney is not made in anticipation of civil litigation, but is an investigative aspect of criminal law enforcement, the principal function of the police department itself. Moreover, as we hold herein, there is no privilege of confidentiality for police investigations of alleged law violation, except under certain circumstances not here applicable.

The city has cited only Commonwealth v. Triplett, 462 Pa. 244, 341 A.2d 62 (1975), in support of its position, stating: "The Pennsylvania Supreme Court in a criminal case refused to permit police officers to be questioned or cross-examined on statements given to the Police Department." The city further suggests that the "reasoning" of Triplett is applicable in this case, although it does not indicate the reasoning to which it refers. We believe Triplett clearly has no application to this case. There, the court was concerned with statements given by a police officer pursuant to section 10-110 of the Philadelphia Home Rule Charter. This section, in essence, provides that city employes, as a condition of employment, waive their Fifth Amendment right against self-incrimination with respect to "affairs or government of the City," and may be discharged from city employment if they invoke it in any such connection. Our Supreme Court in Triplett merely held that any statement given by a city employe under such threat of dismissal for invoking his privilege was not voluntary and could not be used against him in a criminal proceeding for any purpose. The present case in no way involves anyone's Fifth Amendment rights. Moreover, there is, of course, no

privilege against self-incrimination applicable to the police department itself which would authorize it to refuse to divulge any information tending to incriminate a police officer.

The city suggests that: "Any statements made by police officers should also not be made subject of discovery because these statements are made pursuant to the City Home Rule Charter." It is not clear to us what this statement means. All city governmental activity is done pursuant to the charter. On the other hand, the suggestion may be that all the officers who gave statements would have pleaded the Fifth Amendment and refused to give statements, except for the threat of dismissal under section 10-110 of the Philadelphia Home Rule Charter. It may well be that some or all of the statements given by police officers were given under these circumstances and would be inadmissible in prosecutions against them under Triplett. However, that is not the issue before us. Our issue here is plaintiff's right of investigation by discovery. Moreover, there is no reason why such statements might not be used in a civil proceeding, pursuant to the reasoning of Triplett.

Both sides have cited Tataren v. Little, et al., 2 D. & C. 3d 651, decided by Honorable Paul Chalfin on February 2, 1977. In that case, the court ordered the production for in camera inspection, inter alia, of:

"All reports, statements, summaries, memoranda, and other materials of any type or form pertaining to the facts, incidents, and occurrences described in the complaint, and the Philadelphia Police Department's and the City of Philadelphia's investigations thereof, including materials concerning the result(s) of said investigations."

In discussing Tataren, the city stated that "the Court ordered the routine investigation turned over to plaintiff's counsel, but all other investigations were to be viewed in camera by the Court." Judge Chalfin stated:

"Thus, files containing the results of a *routine* police investigation into an instance of violence—even though a police officer is accused of committing the violence—are not exempted from discovery as made 'in anticipation of litigation.' Where, however, the investigation goes beyond the ordinary scope, at the instance of the City's Law Department or otherwise, only the routine portions need be disclosed—the results of the expanded investigation are 'made in anticipation of litigation' and are therefore exempt from disclosure.

"Here, the police department has not demonstrated that its investigation went beyond the routine scope. We therefore conclude that the City cannot use the cloak of this exemption." (Emphasis supplied.)

It is thus apparent that the distinction made by the court was between routine investigations and those prepared for litigation. Moreover, in Tataren, the court rejected, as we do here, the city's "bare assertion of privilege." Admittedly, Judge Chalfin's order requested that all the material referred to in his order be submitted to the court for in camera inspection. A reading of the opinion suggests to us, however, that his primary concern in in camera inspection was not police investigative reports, but police personnel records (not here at issue).

Charges of police misconduct against the citizenry tend to shake the confidence of the public in our law enforcement administration. The President Judge of this court, we believe, has properly

50

taken steps to expedite their resolution. It is in the best interest of the city that the action of the police department in handling such charges against any of its personnel be subjected to public scrutiny, to avoid the department's being condemned simply upon publicized complaints. It is also in the best interest of citizens that they know that any complaints they make will be promptly and fairly resolved in the first instance by the police department itself and, where appropriate, in the courts. Nothing encourages suspicion more than secrecy. We believe it is the appropriate function of the judiciary to strike a proper balance between the public's right to know what its government is doing and the rights of governmental officials and employes to confidentiality or privacy under appropriate circumstances.

For the reasons stated, we enter the following

## ORDER

And now, January 31, 1978, the defendant, City of Philadelphia, is ordered, pursuant to plaintiff's motion for inspection under Pa. R.C.P. 4009, to produce for plaintiff's inspection and, if plaintiff desires, copying all documents and records of the police department involving investigation of the incident of August 24, 1975, the subject of this litigation, including, but not limited to, any statements, reports and recommendations, and a transcript of any hearing by the Internal Affairs Unit of the police department.