**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 25 WAP 2012 |
| | : |
| Appellant | : Appeal from the Order of the Superior |
| | : Court entered November 9, 2011 at No. |
| | : 1948 WDA 2007, reversing and vacating |
| v. | : the Judgment of Sentence of the Court of |
| | : Common Pleas of Allegheny County |
| | : entered March 15, 2007 at CP-02-CR- |
| MICHAEL MOLINA, | : 0007403-2004 and CP-02-CR-0009547- |
| | : 2004 and remanding. |
| Appellee | : |
| | : ARGUED:  September 10, 2013 |

**DISSENTING OPINION**

**MR. CHIEF JUSTICE CASTILLE**                **DECIDED:  NOVEMBER 20, 2014**

I dissent and also join Mr. Justice Eakin's Dissenting Opinion.  Because the trial court committed no error, I would reverse the Superior Court decision and reinstate the judgment of sentence.  My reasons follow.

At trial, the Commonwealth introduced, without objection, evidence that appellee had called a detective and provided some information about the missing victim.  After appellee contradicted himself concerning when he had last seen the victim, the detective asked him to come to the police station to speak further; appellee refused.  At issue on appeal is a later comment by the trial prosecutor in closing argument which

adverted to the fact that appellee had refused to come down to the police station.[1] Appellee's counsel objected, asserting that the reference was "improper comment, absolutely improper." In response, the prosecutor argued – correctly under existing law -- that commentary on pre-arrest silence is not improper. In the ensuing sidebar discussion, defense counsel cited no law or other authority for his objection that a pre-arrest refusal to cooperate with police cannot be commented upon; much less did counsel argue that he was seeking to preserve a constitutional claim that would extend existing Fifth Amendment law to embrace the pre-arrest period. Nor did counsel forward an objection premised upon the Pennsylvania Constitution being more protective than the Fifth Amendment when it comes to purported references to pre-arrest silence. Rather, it appears, counsel erroneously thought that some unspecified law already prohibited all references to pre-arrest silence. The trial court overruled the objection. Given the objection and argument actually forwarded and preserved, it would have been patent error for the court to sustain the objection made.

In finding that the trial court erred, the Superior Court *en banc* majority strayed from its institutional role, which should counsel restraint when asked to innovate a federal constitutional right never accepted by the U.S. Supreme Court or by this Court – especially when the trial court was never asked to embrace the innovation. Instead, the intermediate court established a novel and far-ranging Fourteenth Amendment parameter for the Fifth Amendment right against "compulsion," in circumstances that were not exactly crying out for the innovation. The court's holding essentially

---

[1] The Opinion Announcing the Judgment of the Court by Mr. Justice Baer (hereinafter "OAJC") sets forth the prosecutor's argument, the defense objection, the relevant ensuing sidebar discussion, and the prosecutor's final comment, verbatim. OAJC Slip Op. at 3-4.

guaranteed that this Court would have to review the issue. After granting review, this Court then had the benefit of an intervening case from the U.S. Supreme Court, which offered the prospect of resolving the Fifth Amendment issue. See Salinas v. Texas, __ U.S. __, 133 S.Ct. 2174 (2013). As it happened, however, the High Court did what the Superior Court did not do: it exercised restraint and caution, upon recognizing that Salinas was not the appropriate vehicle for resolving the novel federal constitutional question presented.[2] The Salinas decision proves that the Superior Court's decision is unsustainable on its terms; summary vacatur and remand could decide this case.

The Superior Court should have been more cautious. The case presents multiple circumstances counseling restraint, including some of the same cautionary circumstances that led the Salinas Court not to act. I recognize the temptation when a constitutional claim is at issue. But, the Superior Court is not the U.S. Supreme Court and its primary institutional role *vis a vis* that Court in cases posing federal constitutional questions is to implement that Court's existing commands concerning questions of federal law. See, e.g., Purple Orchid, Inc. v. Pennsylvania State Police, 813 A.2d 801, 806 (Pa. 2002) (U.S. Supreme Court is ultimate authority in claims under U.S. Constitution). See also Commonwealth v. Cunningham, 81 A.3d 1, 8 (Pa. 2013) (indicating that "state judges who may be circumspect about evolving normative pronouncements of five of nine Justices – which forcefully are rejected by four others – may be reluctant to apply those standards more broadly than is absolutely required.");

---

[2] The High Court had granted *certiorari* in Salinas "to resolve a division of authority in the lower courts over whether the prosecution may use a defendant's assertion of the privilege against self-incrimination during a noncustodial police interview as part of its case in chief." Id. at __, 133 S.Ct. at 2179. The Court plurality ultimately found it "unnecessary" to reach that question "because petitioner did not invoke the privilege during his interview." Id.

Id. at 12-13 (Castille, C.J., concurring) (extension of existing federal retroactivity law should only come from U.S. Supreme Court; this Court is "properly reluctant" to go beyond affirmative commands of U.S. Supreme Court where argument is premised solely upon federal law). State courts should proceed cautiously when asked to be the engine of innovation in federal constitutional law, since mistaken predictive judgments can be disruptive of Pennsylvania law and can cause substantial injustice where the predictive judgments are erroneous. See, e.g., Commonwealth v. Mouzon, 53 A.3d 738, 742-43 (Pa. 2012) (recognizing effect of Pennsylvania Supreme Court's erroneous prediction that U.S. Supreme Court would hold that government was required to bear burden of disproving self-defense claim). See also Commonwealth v. Sanchez, 82 A.3d 943, 992 n.4 (Pa. 2013) (Castille, C.J., concurring) (predictive judgment of whether proportionality review might be required to satisfy Eighth Amendment was incorrect and eventually required repeal of relevant statutory proportionality review provision). Erroneous predictions of federal law affecting criminal cases can be corrected only by this Court or by the U.S. Supreme Court – a Court which generally has little time or inclination to correct every instance of over-reaching by a state appellate court – and this fact, too, should counsel judicial restraint. Accord Commonwealth v. Weiss, 81 A.3d 767, 811-12 (Pa. 2013) (Castille, C.J., concurring) ("Errors in such predictions are subject to correction only by the U.S. Supreme Court, which accepts a handful of cases from state courts in any given term, and has no particular incentive to correct erroneous predictions in state collateral appeals. And, errors in such predictions favoring the defense run the risk of arbitrarily releasing murderers."). One-sided mistakes affecting the evidence available to the Commonwealth – like mistakes wrongly imposing a burden of proof upon the Commonwealth – do not lend themselves to easy correction given that

the prosecution has a limited right of appeal (a circumstance which itself is a product of the U.S. Supreme Court's earlier criminal procedural revolution).[3]

Momentous decisions such as the one under review – affecting the conduct of police and the evidentiary options available to the Commonwealth -- should be reserved for egregious circumstances. At a minimum, such decisions should be limited to circumstances where the constitutional innovation was plainly implicated both in terms of issue preservation and in terms of the circumstances. For multiple reasons, in my view, this case did not warrant indulging a predictive Fifth Amendment judgment. For one thing, under existing law – which the prosecutor invoked in response to the defense objection -- the prosecutor did nothing wrong. Relatedly, appellee never put the trial court on notice that he was seeking relief based upon a theory that required an extension and fundamental alteration of federal constitutional law; thus, the trial court simply cannot be said to have "erred."

Moreover, one has to strain to fit the facts into a Fifth Amendment invocation-of-rights paradigm. This is not a case where, for example, evidence came in over objection to the effect that: the police asked to speak to the defendant, not in custody; the defendant (perhaps being a law professor) said, "Absolutely not, I have a Fifth Amendment right to remain silent in all of my actions with the police department"; that exchange was introduced as substantive evidence at trial of a tacit admission of guilt; the Commonwealth then argued to the jury that it could conclude that the defendant was guilty because any innocent person would have spoken up and protested his innocence;

---

[3] See Benton v. Maryland, 395 U.S. 784 (1969) (applying Fifth Amendment proscription against double jeopardy to state prosecutions via Fourteenth Amendment; overruling seminal due process decision in Palko v. Connecticut, 302 U.S. 319 (1937)).

and, finally, the trial court instructed the jury that it could draw an inference of guilt from the defendant's silence.[4]

Instead, what happened here was that appellee, prior to arrest, actually spoke to the police, he did not even necessarily decline to speak further, the trial event leading the Superior Court to grant relief did not involve substantive evidence of guilt, but only prosecutorial commentary in closing concerning evidence admitted without objection; and there was no instruction from the judge to consider the comment as if it were evidence, much less an instruction inviting the jury to treat appellee's interaction with police as a tacit admission of guilt. As then-President Judge, and now-Justice Stevens observed in dissent below, "the prosecution's statements during closing argument did not constitute the use of pre-arrest silence as substantive evidence of guilt. . . . The prosecution provided no additional commentary on this point, and nowhere did it specifically invite the jury to infer guilt from [Molina's] silence." Commonwealth v. Molina, 33 A.3d 51, 71-72 (Pa. Super. 2011) (Stevens, P.J., dissenting). This is hardly a record warranting a broad innovation in predictive federal constitutional law.

The OAJC obviously realizes that the Superior Court's finding of trial court error cannot be sustained in terms of the federal constitutional right it conjured. The Justices

---

[4] Notably, the Salinas plurality was of the view that a defendant must expressly invoke his right to remain silent when he is otherwise not being compelled to speak, and that a "witness does not expressly invoke the privilege by standing mute." Salinas, __ U.S. at __, 133 S.Ct. at 2181-82 ("A suspect who stands mute has not done enough to put police on notice that he is relying on his Fifth Amendment privilege."). In the absence of an express invocation of Fifth Amendment rights, it is unknown what the defendant's pre-arrest silence actually means; such silence is "insolubly ambiguous." Id. at __, 133 S.Ct. at 2182 (quoting Doyle v. Ohio, 426 U.S. 610, 617 (1976)). In this case, appellee phoned the police and freely spoke to them; what he "refused" to do is to go down to the police station to speak further. He never mentioned the Constitution or his "rights." That is not so much an invocation of a broad constitutional right to silence as it is an expression of a preference respecting the place and manner of speaking with police.

favoring affirmance would instead affirm the grant of relief premised upon conjuring a distinct Pennsylvania constitutional argument that appellee likewise never forwarded to the trial court. I cannot join the innovation for the same reasons I believe the Superior Court erred in conjuring a new federal right on this record: the trial court committed no error, when measured against the objection actually forwarded, and therefore, appellee is not entitled to relief.

I am also disinclined to innovate new Pennsylvania constitutional law in this particular area because it is clear, to me at least, that the better objection in these cases is not a constitutional one, but a more modest one sounding in evidentiary relevance. The OAJC recognizes this point, noting the Superior Court's observation that the probative value of silence is minimal given the ambiguity inherent in silence. After noting that silence obviously does not necessarily convey guilt, the Superior Court also quoted Mr. Justice Musmanno's notorious observation that an accusation of criminal culpability may lead some to dramatically declare their innocence, but for others, "[t]he accusation may be so startling that the accused is benumbed into speechlessness." Commonwealth v. Molina, 33 A.3d 51, 65 (Pa. Super. 2011), quoting Commonwealth v. Dravecz, 227 A.2d 904, 907 (Pa. 1967). Since silence does not reliably convey **anything** respecting the defendant's guilt or innocence, before rushing to make constitutional pronouncements, it may be more instructive to focus on the predicate question of relevance.

Indeed, given the multitude of circumstances that can lead a person not to speak, it is difficult to see the constitutional error. As the OAJC correctly concedes, the jury could have postulated any number of reasons for appellee's decision not to come down to the station and speak further to police, but the OAJC then declares that "jurors generally view silence as an indication of guilt." OAJC Slip Op. at 34 (citing

Commonwealth v. Turner, 454 A.2d 537, 539 (Pa. 1982) ("The view of this Court that there exists a strong disposition on the part of lay jurors to view the exercise of the Fifth Amendment privilege as an admission of guilt is well established.") (citing cases construing Fifth Amendment).  Certainly, Turner made this declaration, but the observation is hardly empirical and, in any event, in cases like this one (at best involving cooperation followed by silence before arrest and innocuous commentary), the observation, even if generally valid, is far less compelling – a reminder of the mischief that can be caused by constitutional over-generalization.  Furthermore, to the extent the jury was tempted to draw an adverse inference, and to the extent the prosecutor can be said to have invited the jury to do so, defense counsel was free to argue from the trial evidence that there are many other possible reasons for a person's refusal to come to the police station.  Not every trial event implicates constitutional values.  But every trial event is subject to screening for relevance.  Appellee here, however, did not forward this objection, either; and so, the trial court again cannot be said to have erred.

Finally, on the merits of the state constitutional issue addressed by the Justices supporting affirmance, I offer the following.  There certainly have been state constitutional holdings rendered in this general area, as ably described by the OAJC.  But, in my view, the decisions are a doctrinal disaster, and further counsel a non-constitutional focus.  The foundational decisions in the area obviously were powered by federal constitutional law.  See e.g., Quinn v. U.S., 349 U.S. 155 (1955) (no ritualistic formula is necessary in order to invoke Fifth Amendment privilege).  The real explosion occurred only after the High Court's "prophylactic" warnings decision governing custodial interrogation in Miranda v. Arizona, 384 U.S. 436 (1966), a case which itself is not exactly a paragon of clear constitutional explication.  See Dickerson v. U.S., 530 U.S. 428, 443-44 (2000) (declining to overrule Miranda premised upon *stare decisis*

concerns, including that "Miranda has become embedded in routine police practice to the point where the warnings have become part of our national culture").

Soon after Miranda, the High Court recognized an exception to its rule of exclusion, holding in Harris v. New York, 401 U.S. 222 (1971), that a statement held to be inadmissible during the prosecution's case-in-chief because the defendant had not been advised of the right to remain silent during custodial interrogation could nevertheless be used for impeachment of a testifying defendant. Not coincidentally, the first decisions from this Court discussing the Pennsylvania Constitution were a response to Harris. Thus, the three-Justice plurality opinion in Commonwealth v. Triplett, 341 A.2d 62 (Pa. 1975), would have departed from Harris and held that a properly suppressed statement could not be used for impeachment purposes, premised upon Article I, Section 9 of the Pennsylvania Constitution. However, that plurality opinion did not include a syllable of state constitutional explanation – a strange circumstance, indeed, since the entire area of concern sprang from Miranda and its progeny. In any event, the effect (and uncertainty) of Triplett was remedied by the citizens of Pennsylvania via an explicit 1984 amendment to Article I, Section 9, obviously designed to ensure that Pennsylvania constitutional law was coterminous with federal law.

There had been no independent Pennsylvania constitutional inroads in this area, in majority decisions at least, prior to the federal dictate in Doyle, supra, 426 U.S. at 617-18 (every post-arrest silence is insolubly ambiguous because of what state is required to advise person arrested under Miranda) (citing U.S. v. Hale, 422 U.S. 171 (1975) (inherent pressures of in-custody interrogation compound difficulty of identifying reason for silence)). And, as I have stated above, the 4-3 state constitutional holding in Turner, including the citation to Fifth Amendment cases as support for the supposed ineluctable perspective that all juries bring to bear on a reference to silence, was

unsupported by anything in Pennsylvania constitutional doctrine. What is most notable, at least from my perspective, is that while the Turner Court dressed up its analysis in state constitutional garb, its reasoning in fact had more to do with simple evidentiary **relevance**. See 454 A.2d at 539 ("While it is efficacious for the Commonwealth to attempt to uncover a fabricated version of events, in light of the 'insolubly ambiguous' nature of silence on the part of the accused, we do not think it sufficiently probative of an inconsistency with his in-court testimony to warrant allowance of any reference at trial to the silence.").

Furthermore, a subsequent state constitutional decision, Commonwealth v. Bolus, 680 A.2d 839 (Pa. 1996), is in apparent tension with Turner. In Bolus, this Court held that reference to a testifying defendant's pre-arrest silence during his trial testimony did not violate the Fifth Amendment or Article I, Section 9 of the Pennsylvania Constitution and, as such, Bolus provides further support for my preference for a non-constitutional basis for deciding pre-arrest silence cases. In holding that trial counsel was not ineffective for failing to object to the prosecutor's use of Bolus's silence to impeach his credibility, the Bolus Court itself distinguished the facts before it from Turner based on the timing of the referenced silence. 680 A.2d at 843 ("In Turner, the period of silence which was referenced by the prosecution occurred after the defendant's arrest, but prior to the time the defendant was given his Miranda warnings. In the instant matter, the prosecutor questioned [Bolus] regarding his silence which occurred months before he was arrested."). In this case, of course, we are also presented with alleged commentary on pre-arrest silence, though not in the context of impeachment during a testifying defendant's trial testimony. As a matter of state constitutional explication, the Bolus case is no more helpful than Turner. This doctrinal

mishmash is a further reason to tread cautiously before constitutionalizing a solution to a problem that sounds, primarily, in relevance.

For the reasons I have outlined, I do not believe that the trial court erred. Moreover, I view the core problem in this area not to be a constitutional one, but a question of relevance respecting what inferences can be drawn from silence – or non-cooperation, for that matter – which is a point long made by this Court. See, e.g., Dravecz, 227 A.2d at 907. I would reverse and reinstate the judgment of sentence.